UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Carlos D Lopez-Aguilar

v.

Andrew Ackley, Acting Warden,  et al.

Civil No. 26-cv-334-LM-TSM
Opinion No. 2026 DNH 099 P

**O R D E R**

Petitioner Carlos D. Lopez-Aguilar[1] filed a petition under 28 U.S.C. § 2241 asserting that his civil immigration detention is unlawful in the absence of a bond hearing at which the government is required to prove that he poses a danger to the community or a flight risk if released. This court granted Lopez-Aguilar's petition and ordered the government to provide him with a constitutionally adequate bond hearing before an Immigration Judge (IJ). A bond hearing was held, but the IJ denied release, finding that Lopez-Aguilar is dangerous.

Presently before the court is Lopez-Aguilar's motion to enforce this court's order granting his habeas petition. Lopez-Aguilar contends that the bond hearing provided was constitutionally inadequate because the evidence presented at his hearing was insufficient as a matter of law to establish dangerousness. The

---

[1] The government asserts that petitioner's name is Carlos D. Lopez-Aguilar. Petitioner refers to himself as Carlos D. Lopez in his petition and does not dispute that his full name is Carlos D. Lopez-Aguilar. Moreover, this name (Carlos D. Lopez-Aguilar) corresponds with the record evidence submitted by petitioner. Accordingly, the court will refer to petitioner as Lopez-Aguilar.

government objects. For the following reasons, Lopez-Aguilar's motion (doc. no. 7) is

denied.

## BACKGROUND[2]

Lopez-Aguilar is a forty-six-year-old citizen of Guatemala who entered the

United States in 1993 at the age of thirteen. Since his arrival in this country, Lopez-

Aguilar has had numerous encounters with law enforcement.

- September 1994: He was arrested (at age 14) for "Rape – strongarm." Although he was found responsible in 1995, it is not clear what, if any, sentence he received.

- June 1995: He was arrested for "intimidation" and found responsible the same year.

- June 1997: He was arrested for burglary, damaging property, and receiving stolen property. He was convicted and sentenced to one year in jail (all but 45 days suspended).

- October 1997: He was arrested for burglary (which was dismissed) and receiving stolen property (which resulted in a conviction).

- February 2005: He pled guilty to failing to register as a sex offender. This conviction was vacated in 2025.

- August 2005: He was arrested for larceny (which was dropped) and aggravated assault involving a weapon (which was dismissed).

---

[2] The following facts are drawn from materials available to the IJ at the time of the bond hearing. They are recited in the light most favorable to the IJ's decision. See Timbigamba v. FCI Berlin, Warden, Civ. No. 26-cv-281-LM-AJ, 2026 WL 1470320, at *1 n.1 (D.N.H. May 26, 2026); cf. United States v. Torres Monje, 989 F.3d 25, 27 (1st Cir. 2021) (explaining that, on a challenge to the legal sufficiency of the evidence to support a criminal conviction, the court reviews the evidence in the light most favorable to the verdict).

- November 2012: He was arrested for obstructing the police, but the charge was dismissed.

- October 2022: The record indicates he was arrested for a "traffic offense," which is still pending.

- December 2023: He was arrested for driving without a license. This is still pending.

- April & November 2024: He was arrested two more times for driving without a license. Both charges are still pending.

On December 4, 2024, Immigration and Customs Enforcement (ICE) agents arrested and detained Lopez-Aguilar and placed him in removal proceedings, charging him with being inadmissible by virtue of being present in the United States without being admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Lopez-Aguilar has been detained ever since. At some point during his detention, an IJ ordered Lopez-Aguilar removed and denied his request for cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, §§ 201-204, 111 Stat. 2160, 2196-2201 (1997).[3] On April 9, 2026, Lopez-Aguilar appealed this decision to the Board of Immigration Appeals (BIA).

On May 2, 2026, Lopez-Aguilar filed a petition for a writ of habeas corpus in this court. Among other things, he claimed that his detention without a bond

---

[3] NACARA allows certain noncitizens facing removal (including those from Guatemala) to apply for "discretionary relief under prior, more generous statutory standards." Ramirez-Matias v. Holder, 778 F.3d 322, 325 (1st Cir. 2015) (quotation omitted).

hearing violated his rights to due process under the Fifth Amendment.[4] In an order dated May 8, 2026, this court found that Lopez-Aguilar was "entitled to a bond hearing as a matter of due process" and ordered the government to provide him with "a constitutionally adequate bond hearing before an IJ within 7 days." Endorsed Order of May 8, 2026.

At the bond hearing, the government argued that Lopez-Aguilar is a danger to the community based on his "significant and extensive criminal history throughout his entire time in the United States." Doc. no. 8-1 at 2:30-35.[5] The government highlighted the fact that Lopez-Aguilar was found responsible for rape and intimidation, in addition to his conviction for failing to register as a sex offender and his more recent string of arrests.[6] Lopez-Aguilar countered that his convictions are old, his failure to register as a sex offender conviction was vacated, and his most recent offenses involved "minor motor vehicle infractions." Id. at 5:05-10. Counsel also argued that his juvenile record should not receive any weight. Finally, counsel highlighted several letters of support from Lopez-Aguilar's family and friends, in addition to the many hours of classes that Lopez-Aguilar completed while in detention.

---

[4] Lopez-Aguilar represented that he did not seek a bond hearing in immigration court because it would have been futile given the BIA's decision in In re Yajure Hurtado, 29 I. & N. Dec. 216, 229 (BIA 2025).

[5] The government submitted an audio recording of the bond hearing (conventionally filed as an MP3 file as doc. no. 8-1). As of the time of this order's issuance, no written transcript of the bond hearing was available.

[6] The government also argued that Lopez-Aguilar is a flight risk.

Ultimately, the IJ denied release on the basis that the government proved by clear and convincing evidence that Lopez-Aguilar is a danger to the community and that there is no amount of bond or condition of release that could ameliorate that danger. The IJ cited Lopez-Aguilar's "prior convictions as well as the more recent interactions with law enforcement," including his recent arrests for operating without a license. Id. at 10:08-15. The IJ also considered Lopez-Aguilar's course completions and community support but found that those factors did not adequately mitigate his dangerousness.[7]

## DISCUSSION

I.    Background

A noncitizen who is "in the country" may be detained during the pendency of removal proceedings pursuant to 8 U.S.C. § 1226. Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Generally speaking, DHS has the authority to release noncitizens facing removal proceedings on "bond of at least $1,500" or "conditional parole." 8 U.S.C. § 1226(a). However, the Immigration and Nationality Act (INA) provides that bond is not available in all cases. See, e.g., id. § 1226(c) (eliminating DHS's discretion to release certain categories of "criminal" noncitizens). And recent decisions of the BIA have severely curtailed IJs' ability to release noncitizens on bond. See In re Yajure Hurtado, 29 I. & N. Dec. 216, 221 (BIA 2025) (holding that

---

[7] The IJ did not find that Lopez-Aguilar is a flight risk.

IJs lack authority to grant bond to noncitizens who are present in the United States without admission).

Nevertheless, this court and others have recognized that noncitizens with sufficient ties to the United States have a due process right not to be subjected to civil immigration detention unless the government proves at a bond hearing that the noncitizen is dangerous or a flight risk. See, e.g., Destino v. FCI Berlin, Warden, Civ. No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *9 (D.N.H. Dec. 24, 2025), appeal filed, No. 26-1181 (1st Cir. Feb. 20, 2026). In other words, some noncitizens have a due process right to a bond hearing regardless of whether their detention is mandated by statute. Id. at *7. In this case, the government has taken the position that Lopez-Aguilar is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and they have suggested that his prior offenses make him subject to § 1226(c), too. This notwithstanding, the government agreed that Lopez-Aguilar is entitled to a bond hearing as a matter of due process if this court applies Destino. Doc. no. 4 at 2. The court therefore applied Destino and ordered the government "to provide [Lopez-Aguilar] with a constitutionally adequate bond hearing before an IJ." See Endorsed Order of May 8, 2026. A bond hearing was held on May 13, but as noted, the IJ denied release.

Lopez-Aguilar now moves to enforce this court's May 8 order, contending that his bond hearing was constitutionally inadequate because the evidence submitted was insufficient as a matter of law to find dangerousness. The government argues that 8 U.S.C. § 1226(e) deprives this court of jurisdiction to review the IJ's bond

determination and that, even if the court does review it, due process was satisfied. The court will first address the government's jurisdictional argument before turning to the merits.

II.    Section 1226(e) Does Not Deprive This Court of Jurisdiction to Review
       Whether the Bond Hearing Comported with Due Process

Section 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). However, § 1226(e) notwithstanding, "[w]here a court sitting in habeas has ordered a bond hearing to remedy otherwise unconstitutional detention, the court retains authority to ensure that the bond hearing provided passes constitutional muster." Timbigamba v. FCI Berlin, Warden, Civ. No. 26-cv-281-LM-AJ, 2026 WL 1470320, at *6 (D.N.H. May 26, 2026) (citing Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *3-4 (D. Mass. Apr. 14, 2020)). As this court recently explained in Timbigamba, § 1226(e) only bars judicial review of the IJ's "discretionary judgment regarding the application of this section." Id. at *6 n.7 (quoting 8 U.S.C. § 1226(e)). Because Lopez-Aguilar's bond hearing was compelled by the constitution and not § 1226, the IJ's bond determination did not involve "application of" § 1226. Id.

In any event, this court has repeatedly held that "§ 1226(e) does not deprive courts of 'jurisdiction to review an Immigration Judge's discretionary bond denial

7

. . . where that bond denial is challenged as legally erroneous or unconstitutional.'"

Id. (alteration in original) (citing Mayancela Mayancela v. FCI Berlin, Warden, Civ. No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025)); accord Lokombe v. Wesling, Civ. No. 26-cv-253-JL-TSM, 2026 WL 1270814, at *2 (D.N.H. May 8, 2026) (Laplante, J.); Flores v. Brackett, Civ. No. 26-cv-94-PB-TSM, 2026 WL 1179959, at *2 (D.N.H. Apr. 30, 2026) (Barbadoro, J.); see also Zheng v. Rokosky, 826 F. Supp. 3d 545, 553 (D.N.J. 2026) ("[W]hile this Court does not have jurisdiction to review the IJ's discretionary decision to grant or deny bond, it may review whether a bond hearing was fundamentally unfair and thus violated the Due Process Clause of the Fifth Amendment."). Here, Lopez-Aguilar claims that his bond hearing was constitutionally inadequate, so this court has jurisdiction to assess his claim even if review of this bond hearing is constrained by § 1226(e).

III.    Lopez-Aguilar Has Not Established that the Evidence Before the IJ was Legally Insufficient to Prove his Dangerousness

While this court has authority to consider Lopez-Aguilar's claim, that authority is "limited." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). To obtain habeas relief, Lopez-Aguilar must establish "that the evidence before the IJ was such that no reasonable IJ could have concluded that the government met its burden of demonstrating dangerousness . . . to the requisite degree of certainty." Timbigamba, 2026 WL 1470320, at *6. (citing Mayancela Mayancela, 2025 WL 3215638, at *5-6). This is a high burden.

Viewing the record in the light most favorable to the IJ's decision, the court cannot find that the IJ's conclusion on dangerousness constitutes error. As described above, Lopez-Aguilar has been arrested on at least eleven different occasions and convicted of several offenses. Although the most serious charges occurred when he was a teenager, Lopez-Aguilar continued to have encounters with law enforcement throughout his adult life. And most recently, he was arrested on multiple charges of driving without a license—all of which are still pending. While due process requires IJs to evaluate a noncitizen's "current threat to the community," Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), it is not unreasonable for an IJ to find Lopez-Aguilar's recent arrests concerning in light of his history of repeat encounters with law enforcement.

IV.    Lopez-Aguilar's Remaining Claims Lack Merit

Lopez-Aguilar also argues that the IJ did not "meaningfully consider[ ] the individual circumstances that mitigate any inference of dangerousness." Doc. no. 7 at 13. However, the IJ specifically noted Lopez-Aguilar's coursework in custody and his community support but found that they did not adequately mitigate his dangerousness. While the IJ's findings on this subject were brief, they make clear that she considered the issue, rejected the argument, and explained her reasoning.

Lopez-Aguilar also contends that the IJ violated this court's order by "failing to conduct the due process analysis in Destino." Doc. no. 7 at 3. Specifically, Lopez-Aguilar suggests that, under Destino, the IJ should have performed a due process analysis using the three-factor test in Mathews v. Eldridge, 424 U.S. 319, 335

9

(1976). This argument appears to be based on a misunderstanding of this court's order directing the IJ to conduct a bond hearing. Courts use the <u>Mathews</u> balancing test to determine what process is constitutionally due. <u>See, e.g.</u>, Destino, 2025 WL 4010424, at *9-14 (applying <u>Mathews</u> to determine that petitioner was entitled to a bond hearing before an IJ). The <u>Mathews</u> balancing test does not determine how an IJ ultimately decides whether a noncitizen is dangerous or a flight risk; that determination is guided by traditional factors relevant in bond hearings generally. <u>See, e.g.</u>, Makuraza v. Wesling, Civ. No. 1:26-cv-122-JL-AJ, 2026 WL 1068066, at *3 (D.N.H. Apr. 20, 2026) (explaining that IJs may consider a noncitizen's criminal history, among other things, in making a dangerousness determination).[8]

Based on a review of the record favorable to the IJ's finding, this court cannot find unreasonable the IJ's conclusion that Lopez-Aguilar posed a danger to the community by clear and convincing evidence. Thus, the IJ's determination did not violate Lopez-Aguilar's due process rights.[9]

---

[8] Lopez-Aguilar also appears to argue that his detention has become unreasonably prolonged. Even if properly before the court, this claim fails: the remedy for prolonged detention pending removal proceedings is a bond hearing, which Lopez-Aguilar has already received. <u>See</u> Fils-Aime v. FCI Berlin, Warden, 808 F. Supp. 3d 218, 226 (D.N.H. 2025).

[9] Lopez-Aguilar also argues that, given his extensive ties to the United States, the IJ erred in concluding that there is "no bond amount or condition of bond that would assure" his appearance. Doc. no. 5-1 at 1. It is not entirely clear to the court why the IJ included this language in her written order as she did not find that Lopez-Aguilar posed a risk of flight. In any event, because the IJ permissibly concluded that Lopez-Aguilar should be detained based on his dangerousness, any error in evaluating his risk of flight is harmless. <u>See</u> Hernandez-Lara v. Lyons, 10 F.4th 19,

## CONCLUSION

For all these reasons, Lopez-Aguilar's motion (doc. no. 7) is denied. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 23, 2026

cc:   Counsel of Record

---

41 (1st Cir. 2021) (describing dangerousness and flight risk as alternative bases for detention).

11